**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CESAR AUJUSTO VALASQUEZ,**

        **Petitioner,**

**vs**                         **Case No: 05-73281**
                                 **HONORABLE VICTORIA A. ROBERTS**

**BLAINE LAFLER, WARDEN,**

        **Respondent.**
_____/

**ORDER DENYING PETITIONER'S OBJECTIONS, ADOPTING THE REPORT AND
RECOMMENDATION AND DENYING THE PETITION**

**I.    INTRODUCTION**

      Before the Court are Petitioner's Objections to the Magistrate's Report and

Recommendation.  Cesar Aujusto Valasquez (Petitioner")  is before the Court *pro se.*

For the following reasons, the Court **DENIES** the Objections, **ADOPTS** the R&R

recommendation to deny the Petition, and accordingly, **DENIES** the Petition.

**II.    BACKGROUND**

      Petitioner was charged with possessing with intent to deliver 650 grams or more

of cocaine under M.C.L. § 333.7401(2)(a)(iv) (2002).  The trial court initially excluded

evidence seized incident to arrest for previous similar conduct, but this ruling was

overturned by the Supreme Court of Michigan.

      On May 29, 2002, a jury convicted Petitioner.  He was sentenced to a term of

thirty to sixty years imprisonment as a habitual offender under M.C.L. § 769.10.

      Petitioner appealed his conviction to the Michigan Court of Appeals on several

1

grounds.  The Michigan Court of Appeals found no merit to Petitioner's appeal.  *People v. Valasquez*, No. 243083, 2004 WL 315169 (Mich. Ct. App. Feb. 19, 2004) (per curiam).  Proceeding *pro se*, Petitioner sought leave to appeal to the Michigan Supreme Court.  His request was denied.  *People v. Valasquez*, 683 N.W.2d 676 (Mich. 2004).

Petitioner, proceeding *pro se* (apparently assisted by a "jail house lawyer") filed his application for habeas corpus on August 25, 2005.

Magistrate Judge Paul J. Komives recommends denial of Petitioner's application on July 13, 2006.  Petitioner objects to the R&R on the following grounds:

(1) the Magistrate incorrectly determined the prosecution provided sufficient evidence;

(2) the Magistrate incorrectly determined Petitioner's constitutional right to due process was not violated by the admission of evidence under state evidentiary rules including admission of:

(a) prior acts evidence;

(b) Petitioner's inculpatory statement during custodial interrogation without inclusion of two and a half hour video of the entire interrogation;

(c) evidence related to prior police surveillance of Petitioner; and/or

(d) drug profile evidence;

(3) the Magistrate incorrectly determined Petitioner's counsel was not constitutionally ineffective; and

(4) the Magistrate incorrectly determined the cumulative prejudicial effect of the state court evidentiary rulings did not violate his due process rights.

The Magistrate adopted the background and facts as stated in the Michigan Court of Appeals' decision:

The police stopped defendant's car for a traffic offense after receiving information from a confidential informant that defendant may have been involved in transporting narcotics from Florida to Michigan.  Defendant had

2

been driving in an erratic manner, leading the police to believe he was trying to evade cars that might be following him. The car defendant was driving was registered to another person. After defendant was stopped, he consented to a search of the vehicle. The police found approximately forty-six kilograms of cocaine in a hidden storage compartment in the rear of the car. Pagers, cellular telephones, and cash were also confiscated. Defendant gave a statement to the police denying knowledge of the cocaine.

The search and arrest took place in January 2001. The police had previously followed defendant in October and December 2000, suspecting him of being involved in narcotics trafficking. Each time, defendant was driving a Volvo automobile registered to another person, and drove in an erratic manner that led the police to believe he was trying to evade cars that might be following him.

Further investigation revealed that defendant had previously been stopped for speeding in Georgia, and the police there determined that defendant drove a van registered to another person. On that occasion, defendant consented to a search of the vehicle and the police discovered a hidden compartment in the rear of the van that contained trace amounts of cocaine. A videotape of the Georgia search was played for the jury in this case. A cellular telephone, pager, and cash were also confiscated.

*Valasquez*, 2004 WL 315169, at *1.

## III. STANDARD OF REVIEW

### A. 28 U.S.C. § 2254(d)

#### 1. Generally

Because he filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its provisions govern. *Katt v. Lafler*, No. 06-1958, 2008 U.S. App. LEXIS 6596, at *4 (6th Cir. Mar. 24, 2008) (unpublished) (citing *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007)).

Under AEDPA's amendment to the habeas statute, 28 U.S.C. §§ 2241 et seq., § 2254(d) governs the Court's habeas corpus review of state court decisions:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States*; or

(2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  The "contrary to" and "unreasonable application of" prongs are independent considerations.  A state court decision can be both contrary to and an unreasonable application of "clearly established" law. *Williams v. Taylor*, 529 U.S. 362, 386 (2000).  Petitioner only alleges violation of subsection (1) of § 2254(d).

## 2.    Clearly Established Law

"Clearly established Federal law, as determined by the Supreme Court of the United States," includes law that qualifies as an "old rule" under *Teague v. Lane*, 489 U.S. 288 (1989), with the additional limitation that it is restricted to Supreme Court precedent.  *Williams,* 529 U.S. at 379-384.  Under *Teague*, an old rule is defined as one which does not "break[] new ground or impose[] a new obligation on the States or the Federal Government" and is "dictated by precedent existing at the time the defendant's conviction became final."  *Id.* at 381 (quoting *Teague*, 489 U.S. at 301).

Thus, when deciding what constitutes clearly established law, the question relates to clearly established law at the time Petitioner's conviction became final. *Stallings v. Bobby*, 464 F.3d 576, 581 (6th Cir. 2006).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles

4

set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  However, it is important to note that "clearly established" law refers only to the holdings, as opposed to the dicta, of the Supreme Court's decisions.  *Id.* at 71 (citing *Williams*, 529 U.S. at 412).

"[R]ules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." *Williams*, 529 U.S. at 382.  "[C]learly established law . . . includes legal principles and standards enunciated in the Court's decisions."  *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir.  2002).  Accordingly, "an explicit statement by the Supreme Court is unnecessary; rather, 'the legal principles and standards flowing from [Supreme Court] precedent' also qualify as 'clearly established law.'"  *Lakin v. Stine*, 431 F.3d 959, 961 (6th Cir. 2005) (quoting *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005)).

### 3.     Contrary to Clearly Established Law

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams,* 529 U.S. at 413.  Citing *Williams*, the Sixth Circuit explains that "[a] state-court decision is considered 'contrary to . . . clearly established federal law' if it is 'diametrically different, opposite in character or nature, or mutually opposed.'"  *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir.  2007) (quoting *Williams*, 529 U.S. 362); *Mahdi v. Bagley*, No. 05-3471, 2008 U.S. App. LEXIS 14260, at *14 (6th Cir. July 7, 2008)

(unpublished).

Nonetheless, the mere failure to cite Supreme Court precedent does require a finding that the decision is "contrary to" clearly established law. *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, a decision may not be contrary to clearly established law, even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

**4.      Unreasonable Application of Clearly Established Law**

An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.   A district court must apply an objective test of reasonableness in deciding whether there has been an "unreasonable application." *Id.* at 410-411.  A reasonable application includes at least those instances where "fair-minded jurists could disagree" about the state court's conclusion. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("Ignoring the deferential standard of § 2254(d)(1) for the moment, it can be said that fair-minded jurists could disagree over whether [the peitioner] was in custody.").  There is an important distinction between unreasonable and erroneous, and it is not enough to find that a state court decision applied clearly established federal law erroneously or incorrectly; the application must also have been *unreasonable. Williams,* 529 U.S. at 409-413*; Ivory*, 509 F.3d at 291.

When determining whether a state court reasonably applied Supreme Court precedent, district courts are not limited to the precise, narrow, fact-specific results of Supreme Court decisions. "[A] state court decision makes 'an unreasonable application of this Court's precedent' when the court 'unreasonably extends a legal principle from our precedent to a new context where it should not apply . . .' but, it is important to emphasize, . . . that a lower court also errs when it 'unreasonably refuses to extend that principle to a new context where it should apply.'" *Withrow*, 288 F.3d at 851 (emphasis omitted) (quoting *Williams*, 529 U.S. at 407); *see also McCalvin v. Yukins*, 444 F.3d 713, 719-722 (6th Cir. 2006) (considering and ultimately refusing to extend a principle).

In *Yarborough*, Justice Kennedy summarizes the approach district courts should employ when examining the reasonable application of clearly established federal law:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

*Yarborough*, 541 U.S. at 664.

## IV.    ANALYSIS

### A.    Objection 1: Sufficiency of the Evidence

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S.

358, 364 (1970).

The Supreme Court precedent of *Jackson v. Virginia* governs constitutional

challenges based on sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light
> most favorable to the prosecution, any rational trier of fact could have found
> the essential elements of the crime beyond a reasonable doubt. This familiar
> standard gives full play to the responsibility of the trier of fact fairly to resolve
> conflicts in testimony, to weigh the evidence, and to draw reasonable
> inferences from basic facts to ultimate facts.

*Eady v. Morgan*, 515 F.3d 587, 595 (6th Cir. 2008) (citation omitted) (quoting *Jackson v.

Virginia*, 443 U.S. 307, 318-319 (1979)); *Mueller v. Bell*, No. 07-1202, 2008 U.S. App.

LEXIS 4221, at *11 (6th Cir. Feb. 20, 2008) (unpublished).

*Virginia* constitutes clearly established law on sufficiency of evidence claims, and to

succeed in his petition, Petitioner must establish the Michigan Court of Appeals' decision

was contrary to or unreasonably applied *Virginia's* rational trier of fact standard. *Brazzell

v. Smith*, No. 98-1757, 1999 U.S. App. LEXIS 32248, at *16-17 (6th Cir. Dec. 7, 1999)

(unpublished).

Which facts must be proven beyond a reasonable doubt is dependent on how a

State defines the offense. *Gill v. Cason*, No. 06-1982, 2008 U.S. App. LEXIS 13197, at

*13 (6th Cir. Mich. June 18, 2008) (unpublished); *Hoover v. Garfield Hghts. Mun. Ct.*,

802 F.2d 168, 173, 173 n.6 (6th Cir. 1986) (citing *Patterson v. New York*, 432 U.S. 197

(1977)). Thus, the Court looks to state law to determine the elements of the crime.

> Under Michigan law, the elements of intent to deliver cocaine include:
> (1) that the recovered substance is cocaine;
> (2) that the cocaine is in a mixture weighing less than fifty grams;
> (3) that defendant was not authorized to possess the substance; and

(4) that defendant knowingly possessed the cocaine with the intent to deliver.

*People v. Wolfe*, 440 Mich. 508, 516-517, 489 N.W.2d 748 (Mich. 1992) (citing *People v. Lewis*, 178 Mich App 464, 468; 444 N.W.2d 194 (1989)).  Petitioner contests satisfaction of the fourth element.

A person need not have physical possession of a controlled substance to be guilty of possession, which may be actual or constructive.  *Id.* at 519-520.  Likewise, possession may be found even when the defendant is not the owner of recovered narcotics.  *Id.* at 520.  Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance.  *Id.*

The Michigan Court of Appeals applied the *Virginia* standard to the evidence before the jury, and found that a rational trier of fact could have found "defendant knowingly possessed the cocaine."  *Valasquez*, 2004 WL 315169, at *1 (citing *People v. Hampton*, 407 Mich. 354, 366, 285 N.W.2d 284 (1979) (adopting *Virginia*)).

The Magistrate determined this finding was not an unreasonable application of "clearly established" law as stated in *Virginia*.  Petitioner's precise objections to this finding are unclear, but appear to be that the Michigan Court of Appeals:

(1) utilized facts not in evidence;

(2) failed to apply a totality of the circumstances standard of review;

(3) culled the record to find and misconstrue the facts; and

(4) unreasonably based its ruling on the 'any evidence' standard of proof overruled by *Jackson*.

In deciding Petitioner's *Pro Se* Objections the Court applies a less stringent standard than that applied to arguments made by counsel.  *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  Nonetheless, these objections are without merit.

The Michigan Court of Appeals applied *Virginia*, which necessarily required a totality of the circumstances analysis. In addition, the opinion's short statement regarding the possible views of a rational trier of fact, does not indicate it culled the record. Any criticism of the facts relied upon by the jury is properly directed at the jury's credibility determinations, albeit rather futilely, as it is ultimately the responsibility of the fact-finder to find facts based on the evidence presented to it. The Michigan Court of Appeals did not unreasonably apply *Virginia* in finding a rational trier of fact could have found Petitioner guilty.

There is also no merit to the claim that the Michigan Court of Appeals applied a pre-*Virginia* standard to the jury's finding of a verdict of guilty. The Michigan case cited by the Michigan Court of Appeals incorporated the *Virginia* standard. *See Hampton*, 407 Mich. at 368 (citing *Virginia*, 443 U.S. 307). The Michigan Court of Appeals' citation to *Hampton*, and reliance on *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (Mich. 1993), which holds "[c]ircumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime," is not an unreasonable application of *Virginia*. *Id.*

This reasoning also demonstrates why Petitioner's claim that the Michigan Court of Appeals relied on facts not in evidence is without merit. The jury was entitled to draw factual inferences based on facts in evidence, and Petitioner does not establish these inferences were so tenuous that, viewed in the light most favorable to the prosecution, a rational trier of fact could not have found Petitioner guilty. *See Eady*, 515 F.3d at 595 (citation omitted) (quoting *Virginia*, 443 U.S. at 318-319) (This . . . standard gives full

play to the responsibility of the trier of fact . . . *to draw reasonable inferences from basic facts to ultimate facts.*") (emphasis added). More importantly, Petitioner does not demonstrate the Michigan Court of Appeals *unreasonably* applied *Virginia* to the sufficiency of the evidence supporting the jury's verdict.

The Magistrate properly concluded this claim is without merit.

## B.    Objection II: Evidentiary Rulings

### 1.    Generally

Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding. *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) ("[T]o the extent that [petitioner] claims that the trial court's admission of the 'other acts' evidence violated Ohio R. Evid. 404(B), he does not provide a cognizable basis for granting habeas relief."); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Only where the violation of a state's evidentiary rule has resulted in the denial of fundamental fairness, thereby violating due process, will courts grant federal habeas corpus relief. *Sowders*, 837 F.2d at 286. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (quotations omitted).

### 2.    Previous Arrest

There is no clearly established Supreme Court precedent which holds that a

state violates due process by permitting other bad acts evidence. *Bugh,* 329 F.3d at 513 ("While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to,' under AEDPA.") (citations omitted); *Wood v. Jones*, No. 06-12714, 2008 U.S. Dist. LEXIS 50551, at *11-12 (E.D. Mich. July 1, 2008); *Page v. Metrish*, No. 06-12229, 2008 U.S. Dist. LEXIS 41478, at *20-21 (E.D. Mich. May 27, 2008); *Wilson v. Stovall*, No. 05-60219, 2008 U.S. Dist. LEXIS 36281, at *6 (E.D. Mich. May 5, 2008); *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003) ("The admission of this 'bad acts' or 'other acts' evidence against petitioner at her state trial does not entitle her to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence."). Petitioner's only cognizable habeas remedy is to prove that this *particular evidence* was "so prejudicial that its admission . . . rendered his entire trial fundamentally unfair, which denied him due process under the Fifth and Fourteenth Amendments." *Bagley*, 500 F.3d at 519-520. He fails to do so.

On appeal from the state district court, the Supreme Court of Michigan found that the prior acts evidence was admissible under Mich. R. Evid. 404(b), but that the district court should consider on remand whether it was more prejudicial than probative. *People v. Velasquez*, 466 Mich. 863, 645 N.W.2d 658 (Mich. 2002) (directing the Michigan Court of Appeals to consider the case on remand in light of the dissent from

the Michigan Court of Appeals' decision). The district court included a proper limiting instruction directing the jury to only consider the prior acts evidence as to knowledge, absence of accident or mistake, or use of a previous plan or scheme. *Dowling v. United States*, 493 U.S. 342, 353 (1990) ("Especially in light of the limiting instructions provided by the trial judge, we cannot hold that the introduction of [petitioner's] testimony merits" a finding of fundamental unfairness.). In addition, this evidence was "at least circumstantially valuable in proving petitioner's guilt." *Id.*

As a result, the Court finds the admission of this particular evidence, with a proper limiting instruction, did not violate Petitioner's due process right to a fair trial. The Magistrate's reasoning, relying on older precedent emphasizing the relevance of the evidence, underscores this finding.

**3.    Video-Taped Evidence**

Petitioner argues the Michigan Court of Appeals' decision to deny admission of the entire two and a half hour long videotaped interview supports the grant of habeas relief.

It appears there is no clearly established Supreme Court precedent which holds that a state violates due process by denying admission of additional evidence under the rule of completeness. *Cf. Bagley*, 500 F.3d at 519; *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988) (describing rule of completeness).

As the Magistrate noted, Petitioner's inculpatory statements during his interrogation were put before the jury through the testimony of an officer, and the jury

did not see any portion of the video. Plaintiff's counsel cross-examined the officer regarding this testimony.

Petitioner does not propose the use of a small portion of the video, but simply contends the entire video was necessary to protect his due process rights. Petitioner offers nothing that supports the position that the failure to include two and a half hours of video tape was "so unfairly prejudicial," that its admission rendered his entire trial fundamentally flawed. The lengthy video contained extraneous matters, and the testifying witness was cross-examined about the circumstances of the statement. *Bagley*, 500 F.3d at 519-520.

The admission of this particular statement was not "so unfairly prejudicial" that its admission rendered his entire trial fundamentally flawed. *Bagley*, 500 F.3d at 519-520. The Magistrate correctly determined this argument is without merit.

## 4.    Previous Surveillance

There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bagley*, 500 F.3d at 519. Petitioner's only cognizable habeas remedy is to prove that the "particular evidence was so prejudicial that its admission . . . rendered his entire trial fundamentally unfair, which denied him due process under the Fifth and Fourteenth Amendments." *Bagley*, 500 F.3d at 519-520. He fails to do so.

The Magistrate found, "[a]s the court of appeals noted, the evidence tied together petitioner's driving style on prior occasions with that of his arrest, indicating a

14

consciousness of guilt," and correctly found that "[P]etitioner offers no convincing argument as to how the admission of this evidence violated his right to a fair trial." R&R at 14. The state district judge's inclusion of a proper limiting instruction makes the argument that admission of this probative evidence violated Petitioner's right to a fair trial entirely untenable. *See Dowling*, 493 U.S. at 353.

**5.    Drug Profile Testimony**

The Petitioner's claim that the admission of drug profile evidence violated his right to a fair trial was not raised at trial, was found by the Michigan Court of Appeals to have been waived, and is therefore procedurally defaulted. The Magistrate addressed the merits of Petitioner's claim and not Respondent's argument that the claim was procedurally defaulted. "A federal claimant's procedural default precludes habeas review if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Tate v. Bock*, No. 06-1773, 2008 U.S. App. LEXIS 6928, at *4 (6th Cir. Mar. 28, 2008) (unpublished) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)); "To determine whether a claim has been procedurally defaulted, the Court must apply the four-part test laid out in *Maupin v. Smith*." *Id.* at *4-5 (citation omitted) (citing *Girts v. Yanai*, 501 F.3d 743, 753 (6th Cir. 2007)).

Thus, to confirm a procedural default the Court must:

(1) find that there is a state procedural rule that applies to the petitioner's claim, and that the petitioner failed to comply with the rule;

(2) must determine whether the state courts actually enforce the state procedural sanction;

(3) must decide whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of the petitioner's federal constitutional claim; and

(4) examine the state's legitimate interests in the procedural rule in light of the federal interest in considering federal claims.

*Butts v. Sheets*, No. 06-4676, 2008 U.S. App. LEXIS 11930, *7-8 (6th Cir. May 27, 2008) (unpublished) (internal citation omitted) (citing *Reynolds v. Berry*, 146 F.3d 345, 347-348 (6th Cir. 1998)); *Bock*, 2008 U.S. App. LEXIS 6928, at *4.

Where the Petitioner failed to contemporaneously object at trial and the Michigan Court of Appeals noted the issue was not preserved and reviewed only for plain error, Petitioner's claim is procedurally defaulted because it meets the requirements of *Maupin*. *See Bock*, 2008 U.S. App. LEXIS 6928, at *6 ("[Petitioner's] waiver in the trial court meets the *Maupin* test for procedural default. He failed to comply with Michigan's contemporaneous-objection rule by failing to object to the recall of the discharged alternate. The Michigan court enforced the procedural sanction for failure to object contemporaneously because it held that he had waived the argument. While the Michigan Court of Appeals discussed the issue of recalling the juror after concluding it had been waived, this analysis 'was simply a supplement to its holding that [he] had waived any objection.' [Petitioner's] waiver in the trial court was an adequate and independent state ground, and he has not demonstrated cause nor prejudice stemming from it.") (citations omitted); *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 423 (6th Cir. 2003) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989)) (holding that even where a state court considers a waived argument for plain error the claim is procedurally defaulted for purposes of federal habeas review); *Griffin v. Berghuis*, 298 F. Supp. 2d 663, 672 (E.D. Mich. 2004) ("If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a

procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition."); *see also Scott v. Mitchell*, 209 F.3d 854, 865-868 (6th Cir. 2000) ("Ohio's contemporaneous objection rule constitutes an adequate and independent state ground of decision sufficient to bar federal habeas corpus review, notwithstanding the availability and possible invocation of plain error review.").

In order for the Court to review this claim in light of Petitioner's procedural default, he must establish "'cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Stallings v. Bagley*, No. 05-722, 2008 U.S. Dist. LEXIS 26196, at *33 (N.D. Ohio Mar. 31, 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Butts*, 2008 U.S. App. LEXIS 11930, at *7.

To establish "cause," a petitioner must show that: (1) the factual or legal basis for a claim was unavailable; (2) officials interfered to make compliance with the rule impracticable; or (3) counsel was ineffective. *Coleman*, 501 U.S. at 750; *Davis v. Jackson*, No. 01-72747, 2008 U.S. Dist. LEXIS 35362, at *20 (E.D. Mich. Apr. 30, 2008) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-452 (2000)) ("Ineffective assistance of counsel may establish cause for procedural default."). Petitioner alleges only ineffective assistance of counsel.

Thus, resolution of Petitioner's claim rests on the related question of whether his counsel was ineffective, a claim which he also separately submits as a basis for habeas relief. Several district courts concluded, when resolution of the existence of "cause" is intermingled with resolution of the related habeas claim for ineffective assistance of

17

counsel it is appropriate to first resolve the merits of the ineffective assistance of counsel claim. *See Davis v. Jackson*, No. 01-72747, 2008 U.S. Dist. LEXIS 35362, at *20 (E.D. Mich. Apr. 30, 2008) (citing *Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004)); *Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000).

To succeed on a claim of ineffective assistance of counsel, petitioner must demonstrate that: (1) his attorney's performance was deficient; and (2) the performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In assessing whether counsel's performance was deficient, courts "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Both prongs of the *Strickland* standard must be met in order to prevail on a claim of ineffective assistance of counsel; therefore, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Petitioner alleges his counsel was ineffective in not objecting to the use of drug profile evidence. The Court notes that evidence of the practices of drug traffickers is admissible evidence. *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) (citing *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990)) ("We have held that 'law enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish 'modus operandi' of particular crimes. Knowledge of such activity is generally 'beyond the understanding of the average layman.'") (citations omitted)*; United States v. Goode*, No. 97-2163, 1999 U.S. App. LEXIS 16278, at *7-8 (6th Cir. Mich. July 14, 1999) (unpublished); *United States v.*

*Ward,* Nos. 96-5731, 96-5892, 1998 U.S. App. LEXIS 1321, at *12-13 (6th Cir. Jan. 27, 1998) (unpublished) ("Drug courier profile testimony is admissible to demonstrate why the defendant was stopped for investigation, to rebut inferences raised by the defendant's testimony, or to show modus operandi[].") (internal citation omitted); *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990).

The transcript reveals the following questionable testimony, where it appears officers mixed testimony about the modus operandi of drug couriers and traffickers, with testimony providing substantive evidence of Petitioner's guilt:

Q:    Did the fact *that the defendant in this case* was found to have cocaine in his possession [sic] was driving a third party vehicle was that unusual in your experience?

A:    It's common among drug traffickers.

Q:    Sir, you indicated that you have extensive training in highway interdiction?

A:    Yes.

Q:    All right.  *In this particular case the compartment was empty.*  Which, which direction was the vehicle heading?

A:    He was heading southbound.

Q:    All right.  And does that have any significance to you as a narcotics trafficker enforcement?

A:    Yes it does.

Q:    The fact that he's from Miami, the vehicle is out of Miami, which is a known source city would lead you to believe that he was going back to where the source would be at or possibly made a delivery.

Trial Transcript III, Doc. No. 18-2 at 97-98 (emphasis added).

        . . . .

Q:     Okay.  Have your previously been qualified as an expert in the area of narcotic trafficking.

A:     Yes I have.

Trial Transcript III, Doc. No. 18-3 at 134.

. . . .

Q:     Sergeant Miles, as an expert have you had the opportunity to review the police reports and case file as it relates to the case that we're here for?

A:     Yes, I did.

Q:     Okay.  And in your training and experience what factors in this particular case, let me, let me back up.  What significance, if any, does it have to you *that the defendant was driving* a third party vehicle in this case?

A:     A high majority of the time people will get a third party vehicle because it's not connected to them.  And it's a good defense, I don't know it was in there, it wasn't my vehicle.  Specifically, when we do deals we try to get the license plate trying to determine who are [sic] suspect is.  And when they use third party vehicles again it's another way to conceal their identity when trafficking narcotics.

Q:     Sir, is there any significance at all to the paying of cash at hotels?

A:     Again, it doesn't leave a paper trail.  You don't leave credit cards, you don't leave a way to trace that.  You just pay cash and go.

Q:     In your experience in dealing with drug traffickers do individuals usually trust their product with somebody whose [sic] not involved in the distribution.

A:     No.

Q:     And does that, the probability of that occurring increase or decrease as the value of the product increases?

A:     Oh absolutely.  When you're trafficking large amounts of cocaine the person has to be trusted.  I mean, you're not going to let [sic] that kind of money to somebody you don't know.  I mean just as I wouldn't give five, ten thousand dollars I know and put it in their car and let them

20

drive around with it.  It's very valuable.

Q:      If I could have one minute.  Sir you're aware *that the defendant* was found, found to have in his possession three cellular phones and two pagers.  You learned that information, correct?

*Id.* at 139-141 (emphasis added).

[Defense counsel objects to hearsay and the prosecution establishes a foundation]

. . . .

Q:      Okay.  Is there any significance in your experience for drug traffickers to have three cell phones and two pagers?

A:      That means a way to communicate.  When you do narcotics deals or drug deals or transport narcotics you don't want to be stopping at a pay phone.  It's just a way of communication.  And that's how they communicate through pagers and cell phones.

*Id.* at 142.

        Under Sixth Circuit precedent it is debatable whether the testimony was impermissible drug profile evidence.  *Compare Combs*, 369 F.3d at 940 ("After reviewing [the officer's] testimony in its entirety, we conclude that he did not actually testify regarding the intent of the defendant to distribute drugs.  Rather, he testified *regarding conduct that would be consistent with an intent to distribute* and left to the jury the final conclusion regarding whether [the defendant] actually possessed the requisite intent.  The trial court, therefore, did not err in permitting this testimony.") (deciding an evidentiary challenge and holding no violation of Rule 704(b)) (emphasis added); *with Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674 (E.D. Mich. 2004) (deciding a § 2254 claim and describing drug profile evidence as an "attempt . . . to establish activities of a stereotypical drug dealer followed by suggestions that the petitioner conformed to that

21

profile"). Because the status of the offered testimony as drug profile evidence constituting substantive evidence of guilt is debatable, counsel's failure to object does not constitute objectively unreasonable conduct.

The failure to request a limiting instruction is less straightforward. Even if the testimony was permissible, the failure to request a limiting instruction to ensure the jury did not confuse the permissible and impermissible uses of the testimony it received from the officers, makes the failure to request such a limiting instruction highly questionable. *See United States v. Vindiola*, No. 95-16742, 1996 U.S. App. LEXIS 26804, at *5 (9th Cir. Oct. 11, 1996) (unpublished) (citing *Strickland*, 466 U.S. at 694) ("[Petitioner] was not prejudiced *because the district court gave and adequate limiting instruction* and counsel did not object.") (citation omitted).

Any error on the part of counsel to object cannot be attributed to trial strategy. The failure to require a limiting instruction could not have benefitted Petitioner. However, the fact that the status of this particular testimony as drug profile evidence was debatable, convinces the Court that although it marches to the very edge of reasonable conduct, counsel's failure to request a limiting instruction was not objectively unreasonable.

In any event, the Court rests its decision on Petitioner's failure to establish prejudice. Even assuming counsel's conduct fell below an objective standard of reasonableness, the Court finds that Petitioner was not prejudiced by the failure to request a limiting instruction because the result of the trial would have been the same. Assuming some parts of the officer's testimony constituted drug profile evidence, some of the testimony was properly admitted to establish the modus operandi of a drug

22

courier.  If all questionable aspects of the testimony had been omitted, but the officers had been permitted to discuss the modus operandi of drug couriers, the evidence of Petitioner's guilt, i.e., his knowledge of the forty-six kilogram of cocaine in a secret compartment, was strong enough that the Court is confident the result of the trial would have been the same.  Moreover, the Court is convinced that even absent the officer's testimony on modus operandi, because the evidence against Petitioner was so overwhelming in light of the amount of drugs in his car, the secret compartment and tools, his inculpatory statement after arrest, evidence of a common plan or scheme based on his previous arrest in a car with a secret compartment, and the additional evidence, the result of the proceedings would have been the same.  Petitioner fails to convince the Court there is a reasonable probability that the failure to request a limiting instruction resulted in a different outcome to the proceedings. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *Rodriguez v. Renico*, No. 99-10481, 2002 U.S. Dist. LEXIS 23620, at *16-19 (E.D. Mich. Oct. 15, 2002) (citing *United States v. Lui*, 941 F.2d 844, 848 (9th Cir. 1991); *United States v. Quigley*, 890 F.2d 1019, 1023-1024 (8th Cir. 1989)).

Alternatively, the Court may review Petitioner's defaulted claim if he is able to establish "a fundamental miscarriage of justice."  *Butts*, 2008 U.S. App. LEXIS 11930, at *7.  To do so he must establish that a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Id.* at *8.  Petitioner fails to meet this burden in light of the evidence before the Court.

23

Petitioner's claim is procedurally defaulted.

**C.      Objection III: Ineffective Assistance of Counsel**

Petitioner's claim that the Michigan Court of Appeals unreasonably applied *Strickland* is without merit.  For the reasons discussed above, the Michigan Court of Appeals' conclusion that counsel's representation was not constitutionally defective, is not objectively unreasonable.

**D.      Objection IV: Cumulative Error**

The current law of the Sixth Circuit is that cumulative constitutional errors are not cognizable habeas claims.  *Compare* Magistrate's R&R Contrary Conclusion at 19-20 *with Cross v. Stovall*, 238 F. App'x 32, 41 (6th Cir. 2007) (unpublished); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.  No matter how misguided this case law may be, it binds us.") (citation omitted); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[N]ot even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Stallings v. Bagley*, 2008 U.S. Dist. LEXIS 26196, at *50 n.8.

Petitioner's objection is without merit.

## V.    CONCLUSION

The Court **DENIES** the Objections, **ADOPTS** the R&R recommendation to deny the Petition, and accordingly, **DENIES** the Petition.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 5, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner  by electronic means or U.S. Mail on August 5, 2008.

s/Carol A. Pinegar
Deputy Clerk